DODGE (NATIONAL UNION BANK v.). See Case No. 10,053.

## Case No. 3,953.

### DODGE v. PEREZ et al.

[2 Sawy. 645.][1]

Circuit Court, D. California. March 25, 1872.

#### AUTHORITY OF DECISION ON QUESTION OF FACT—MEXICAN GRANT, JURIDICAL POSSESSION UNDER—RIGHT TO PURCHASE UNDER ACT OF JULY 23, 1866—SURVEY OF PUBLIC LANDS—PATENT—COLLATERAL ATTACK.

1. When a question of fact as to the proper location of a Mexican grant has been determined by the district court, and on an appeal the finding has been reviewed and affirmed by the justice of the supreme court assigned to the circuit; the determination is entitled to great weight as authority on a similar issue of fact submitted upon the identical testimony in another proceeding.

2. The magistrate who gave juridical possession to the grantee under a Mexican grant, was not authorized to include lands in the juridical possession not embraced within the exterior lines designated in the grant.

3. A claimant under a Mexican grant who never presented his grant for confirmation under the act of 1851, and who is not in privity with any party who did present the grant, is not within the provisions of the seventh section of the act of congress passed July 23, 1866 (14 Stat. 220), authorizing certain purchasers of Mexican grantees to purchase lands excluded by a final survey of the grant.

4. Lands claimed under a Mexican grant excluded from the external limits of the grant by the express terms of the decree of confirmation, cannot properly be embraced within a survey of the grant, and are public lands subject to survey and sale as such from the time when the decree of confirmation so excluding them becomes final.

[Cited in U. S. v. Southern Pac. R. Co., 45 Fed. 610.]

5. Such lands when surveyed by the surveyor-general of the United States, under the general authority given for that purpose, are subject to selection by the state of California as a part of the lands granted to the state by congress.

6. A patent of the state, valid on its face, cannot be collaterally impeached by matter dehors the patent, by a party having no title, in an action at law brought in the national courts to recover the land purporting to be granted by it

[This was an action by Owen Dodge against Theodosio Perez and others to recover lands.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

J. H. Harding, for plaintiff.
Glassell, Chapman & Smith, for defendant.

SAWYER, Circuit Judge. Plaintiff relies on a patent from the state of California in all respects regular on its face, granting the land as having been located as a part of the school land donated to the state by act of congress. The defendants claim title under a Mexican grant of lands called "Los Nogales," by Governor Alvarado to one Linares, made in 1840. The grant to Linares was duly presented under the act of 1851, to the board of land commissioners for confirmation, in the name of one Garcia et al.; was finally confirmed and finally located by the courts under the act of 1860. The premises in question are excluded from the grant as finally confirmed and located. But the defendants claim that their grantor, Ricardo Vijar, derived his title from Linares before the presentation of the claim by said Garcia et al., for confirmation; that neither the defendants, nor their grantor, Vijar, were parties to said proceedings; that the said grant to Linares was a perfect grant; that being so, under the decision in the case of Minturn v. Brower. 24 Cal. 644, it was unnecessary to present their grant for confirmation, and no rights were lost by their failure to present it; that not being parties to the proceedings had for the confirmation of the grant, they are in no way affected by them; that the decree and location as made erroneously exclude the lands in controversy, and, that they are now entitled to have the question of the proper location of the grant determined irrespective of, and unaffected by, the proceedings already had.

On the other hand, the plaintiff denies both the main facts as claimed by defendants, and the legal conclusions deduced from them. And also insists, that if the defendants' grantor was not by name a party to the proceedings for confirmation, he was the real party in interest; that he did, in fact, prosecute the proceedings at his own expense, and for his own benefit in the names of the parties to the record; and that he is, therefore, as effectually barred by the result, as though he had been a party to the record by name, as well as the real party in interest, and the active party in fact.

Under the view I take upon the question of the location of the grant, it will be unnecessary to decide any of the other questions of fact suggested, or the law arising thereon. The testimony offered in this case to show the location of the grant to Linares, was introduced by agreement from the record of the proceedings in the said case of Garcia v. U. S. [Case No. 5,215], for the confirmation of the grant, and it is, therefore, precisely the same as the evidence on the same point in that case. Whatever the testimony as to the location shows in that case, then, it must also show in this, the testimony being identical.

Conceding that the facts determined in Garcia's Case are not res adjudicata as to the defendants in this case, still the case itself is authority, bearing upon this case upon the same evidence, and the same issue of fact, so far as the determination of a district judge, upon exactly the same state of circumstances, and of the associate justice of the supreme court of the United States sitting as circuit judge in the same court, on appeal from the decision of the district judge, can be regarded as authority controlling my action. It is true that I am not absolutely bound in this case to follow the determination of those distinguished jurists, in deciding the same issues upon the same testimony in another case; but where the question has been deliberately determined in an elaborate written opinion exhaustive of the whole subject, by the district judge, and that determination as to the boundaries now in question affirmed, after further examination on appeal, by the associate justice of the supreme court assigned to the circuit, sitting as circuit judge, it would be presumptuous in me to decline to recognize their action as authority upon the point; but in this case, after a careful examination of the testimony, I happily find no good ground for coming to a different conclusion. It is insisted, however, that the district and circuit judges were hampered in determining the question of location by the terms of the decree of confirmation. which they were compelled to follow, rather than the grant. But in this counsel are mistaken. The description in the decree is a verbatim copy of the description of the grant, except that the decree limits the quantity to "one league, and no more," while the grant says "a league, a little more or less." But the amount within the location is far less than a league, so that this difference in the decree and the grant does not affect the question. The language of the decree construed, being the exact language of the grant, so far as the question at issue is concerned. the construction of the decree is necessarily the construction of the grant. The boundaries of the grant were held to be two creeks mentioned in it, and laid down on the diseño, and the boundary of the San José rancho. The same construction was given to the grant examined by the light of the evidence by the two district judges, who at different times decided the question. and by the justice of the supreme court assigned to the circuit. There was evidently a desire on the part of the judges to so construe the grant, as to give the league of land called for, but it was found impossible. The last location enlarged the amount somewhat by adopting a different line for the southern boundary of the San José rancho, but leaving it still far short of a league. Could the court have ignored the two creeks as boundaries, the league—or at least a much larger quantity than was given—might have been obtained without encroaching on the San

José rancho. But these well-defined natural boundaries could not be disregarded without a manifest disregard of the language of the grant, the plain delineations of the objects on the diseño, and the testimony of witnesses as to the topography of the country.

The juridical possession, whether taken as described in the act of possession, or as pointed out by Lugo to the surveyors, manifestly extended far beyond the limits indicated by the language of the grant, and embraced a large tract of land not included in the diseño at all. The magistrate had no authority to include in the possession lands not within the exterior boundaries of the grant. He was authorized to measure off and segregate within the exterior boundaries indicated the lands granted, not to grant other lands. Manuscript opinions of Mr. Justice Field and Hoffman, J., in U. S. v. Castro [Cases Nos. 14,-749–14754]. I am satisfied that the lands in controversy are not within the exterior limits of the said grant to Linares.

It is next claimed by the defendants that their lessor, Ricardo Vijar, is a purchaser in good faith under the said grant to Linares, and possesses all the qualifications prescribed in the seventh section of the act of congress, "to quiet land titles in California," passed July 23, 1866 (14 Stat. 220), and as such entitled to purchase the lands in controversy from the United States; that the said lands were, therefore, not subject to selection in lieu of the sixteenth and thirty-sixth sections by the state, and that the said selections and patent by the state under which the plaintiff claims are consequently void.

But Ricardo Vijar shows no privity or connection with the proceedings in the case of Garcia v. U. S. [supra], for the confirmation of the Los Nogales grant. On the contrary, he utterly repudiates being a party, or in privity with the parties, to that proceeding; and says that those proceedings in no way affect him. He plants himself upon the grant to Linares, as a perfect grant, requiring no confirmation or survey. He claims that he obtained his title long before Garcia et al. presented their petition, and that they could not affect his rights by their action in that matter. In short, he holds no relation whatever to the proceedings for confirmation, but presents himself in the same attitude that he would occupy if that proceeding, and no other, had ever been had for the confirmation of said grant. In that aspect, his grant has never been presented and never been rejected, and there never has been any survey, and the time allowed having expired, the grant now never can be presented, rejected or surveyed.

Taking his case as he himself presents it, and relies on it, he is, in no sense, within the terms of said seventh section of the act of July 23, 1866. The lands lying without the boundaries of his grant, as it has already been determined, he has no title, and he having never presented any claim for con-firmation, and never had his claim rejected, or the land claimed excluded from any final survey, he is not within the provision of the act of congress, and has no equities whatever. He is, therefore, in no position to attack the patent in any form whatever.

Another view leads to the same result. For the purpose of this view I will assume that Ricardo Vijar was a purchaser in good faith under Linares; that the lands were claimed by him under the Los Nogales grant as such purchaser; that they were occupied as required by the statute of 1866; and that he was a party or privy to the proceedings for confirmation in the case of Garcia v. U. S. The decree of the district court finally confirming the Nogales grant in the case of Garcia v. U. S. bears date January 16, 1857. A survey of the grant to Linares was ordered into the district court of the southern district of California for review November 15, 1859. Exceptions were taken and heard and various proceedings had. In the minutes of the proceedings of said court in said cause for March 20, 1861, is an entry in the words following: "In this case the court delivers an opinion, after having fully considered the evidence in this cause and being fully advised thereof, overruling the exceptions filed in this case and confirming the said survey of the surveyor-general of the United States for the state of California, now on file in this court." The survey "now on file in this court" referred to, excluded the premises in controversy. No formal decree in pursuance of the above entry appears to have been filed, but, unless a final decree was filed and subsequently lost, the court and parties must have treated the foregoing entry as a final confirmation of the survey; for, on April 15, 1861, an appeal was granted from the "decision and decree of the court confirming the survey," etc. The appeal, however, does not appear to have been prosecuted, and no further steps were taken for over nine years. In the mean time the surveyor-general of the United States treated the grant as finally located, and surveyed the lands excluded from this and the neighboring grants, as public lands of the United States. The lands so surveyed as public lands include the lands in controversy.

A certified copy of the plat of township No. 2, among the papers in the case of Garcia v. U. S., introduced in evidence, shows that these lands must have been surveyed into sections and subdivisions as early, at least, as February 28, 1865. The testimony also shows that, on July 3, 1869 (some four years afterward), a state selection, covering the premises in question, was filed in the United States land office at Los Angeles; that the said lands were listed to the state of California January 20, 1870, and patented by the state to the plaintiff's grantor May 5, 1870. This suit was commenced June 3, 1870, and process served on the sixth and seventh of the same month. After all these transactions,

on July 12, 1870, and more than nine years after the rendering of the said decision of March 20, 1861, by Judge Ogier, confirming the survey made, the claimants moved the court to reopen and rehear the case upon the survey, and the district judge granted the motion; and, after taking further testimony, re-confirmed the survey before approved. On appeal to the circuit court, the land confirmed was enlarged in one direction by extending the grant over a portion of land already confirmed to the San José rancho, but not taking in any land outside the two creeks, named as boundaries in the grant and diseño before excluded and surveyed as public lands.

This final confirmation was made September 23, 1871. It is evident that the decision of Judge Ogier of March 20, 1861, was intended to be a final confirmation. It was so treated by him and the parties, otherwise the appeal granted was premature. The appeal was never prosecuted, and manifestly the confirmation of the survey only failed to become final by an oversight in not drawing up and filing a final decree in pursuance of the decision rendered, if such failure there was. The court, however, in 1870, regarded this omission as leaving the case open for further action, and took further proceedings, so that there was in fact no final survey till Sept. 23, 1871. But the survey confirmed, during the nine years succeeding the confirmation of Judge Ogier, must have been treated as final. The officers of the government, as well as the court and the parties, so treated it, and before 1865 surveyed the excluded lands as public lands, and they were so treated by the state of California in making the selections in question, and by the land office in listing them over. The claimants seemed to have acquiesced till roused to action by the commencement of this suit after the land had been selected, listed over and patented as aforesaid. Are they now in a position to resist a recovery? The legal title must prevail in an action of ejection in this court. The defendants, certainly, have not the legal title. They have, at most, but an equity, which cannot avail if the patent issued is not an absolute nullity. Non constat that defendants will ever apply for a patent, even if plaintiff's patent should be avoided. The patent is regular on its face. The proceedings resulting in the patent were the usual proceedings in such cases, and regular in form. The patent is not attacked for any defect in the form of the proceedings. If void at all, it is for matter dehors the patent, and the proceedings resulting in it. It is insisted, however, that the patent is void, because the surveyor-general was not authorized to survey the lands until the final location of the Los Nogales grant, September 23, 1871, and because the land was not open to selection by the state before such final location; and further, because the lands, claimed under a Spanish grant, which the claimants are authorized to purchase under the act of 1866, are not subject to selection. No statute has been called to the attention of the court forbidding a survey of public lands, that may possibly fall within the external boundaries of some Spanish grant, until a final survey; and certainly none to prevent the survey of the public lands not embraced at all within the external boundaries of a grant as designated in the decree confirming it, as is the case now in hand. The decree of confirmation itself in this case excluded the lands, so that they could not have been included in the survey, for they were not embraced within the external boundaries as designated in the decree. So far as the lands in question are concerned, they were finally excluded when the decree of confirmation became final. The defendants' counsel so claims in one branch of his argument. The survey could by no possibility afterwards properly include them. The case of a confirmation of a league of land within exterior boundaries embracing two or more leagues, would be different, for, in that case, there is some latitude for discretion in the location, and the league might be located upon any part, within the exterior limits, and it could not be known what would be excluded till a final survey. But where, as in this case, the decree itself confines the location within certain limits, defined by unmistakable physical objects, as two streams of water, the decree itself finally excludes all lands outside of those boundaries. At least in such case, I do not think the land department could be charged with acting wholly without authority in treating lands thus excluded as public lands.

The only provision of the statute cited to show that lands claimed under a Mexican grant are not subject to selection till after final location, is a section of the act of March 3, 1853 (10 Stat. 246, §§ 6, 7), but this section only refers to pre-emptions, and the plaintiff does not derive his title under any pre-emption claim. No such limitation is found in section 7 of the same act; nor in any other statute called to the attention of the court. Besides, as stated with reference to the survey, this land was necessarily finally excluded from any possibility of ever being properly included in the survey by the terms of the decree, which also follows the language of the grant, and which did not embrace it within the external boundaries designated in it. From the time when the decree of confirmation became final, there was no Mexican grant that could have embraced the lands in question, and they were necessarily public lands, and open to survey and selection as such, unless there is some statute forbidding it, and none has been cited.

As to the claim under section 7 of the act of 1866 (14 Stat. 220), there is no time specified in the act within which the claimants may purchase. The defendants have not

shown what regulations were made by the commissioner of the general land office on the subject, nor whether they have complied with these regulations. They do not show that they have ever made any application to purchase, or that they ever intend, or desire so to do. How long is this privilege to be held open?

The lands appear to have been surveyed sometime prior to 1865, and they were not listed over to the state of California till January 20, 1870, five years after the survey, and nearly four years after the passage of the act of 1866, and during all this time, and from March 20, 1861, the defendants, and their grantors, made no movement in regard to these lands. How were the officers of the land department to know whether the defendants desired, or claimed the right to purchase, or not? In my judgment, the principle adopted in Doll v. Meador, 16 Cal. 325, disposes of this branch of the case. The proceedings resulting in a patent were all taken by the proper officers, and were regular in form. The surveyor-general determined that these lands were subject to be surveyed as public lands, and accordingly surveyed them. The lands having been officially surveyed by the proper officers, the state of California selected them as a part of the lands granted to the state by congress, and filed the selection in the proper land office; and thereupon the proper officer, after taking ample time for consideration, determined that they were subject to selection, and listed them over to the state.

To determine these questions, and act upon the determination was a part of the duties of the land officers, and if they made a mistake in judgment, their action was erroneous, and not a mere nullity. If nobody else complains, the government cannot, and the title of the United States certainly passed. Suppose the United States had brought an action of ejectment to recover these lands of the plaintiff, would not the patent constitute a good defence? I think it would. If so, the patent is not absolutely void, it is at the worst only voidable.

In Doll v. Meador, the court by Field, Ch. J., say: "If the authority to issue the patent depends upon the existence of particular facts in reference to the condition or location of the property, or, the performance of certain antecedent acts, and officers have been appointed for the ascertainment of these matters in advance, who have passed upon them and given their judgment—then the patent, though the judgment of the officers be in fact erroneous, cannot be attacked collaterally by parties showing title subsequently from the same source, much less by those who show no color of title in themselves. In such cases, the parties without title cannot be heard at all, and the parties with subsequent title must seek their remedy by scire facias or bill, or information to revoke the first patent or limit its opera-

tion." 16 Cal. 325. See, also, Ah Yew v. Choate, 24 Cal. 566.

I am satisfied that the patent is not an absolute nullity. If the defendants have any rights, as against the plaintiff, they must establish them in some other proceedings, for the patent must prevail in this action. Let judgment be entered for the plaintiff with costs.